IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **FANSTEEL METALS, INC., F/K/A FMRI, INC.**, <br><br>*Plaintiff*, <br><br>v. <br><br>**MUSKOGEE CITY-COUNTY PORT AUTHORITY**, *et al.*, <br><br>*Defendants*. | Case No. 21-CV-102-RAW |

## ORDER

This matter comes before the court on the Motions to Dismiss filed by Defendants Kennametal, Inc. [Dkt. No. 93]; EverZinc USA, Inc. [Dkt. No. 101]; Metallurg, Inc. [Dkt. No. 107]; and Traxys North America, LLC [Dkt. No. 128]. For the reasons set forth below, the court denies these motions.

## BACKGROUND

This case involves claims asserted pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") regarding the operation of a metal processing and treatment facility. In the context of considering the present motions, the court accepts as true the well-pled factual allegations from the Second Amended Complaint [Dkt. No. 89]. *See Butler v. Bd. of Cty. Commissioners for San Miguel Cty.*, 920 F.3d 651, 654 (10th Cir. 2019).

Beginning in 1957, Plaintiff Fansteel Metals, Inc., f/k/a FMRI ("Fansteel") operated a facility in Muskogee County, Oklahoma ("Fansteel Site"). Operations at the Fansteel Site involved the processing of raw materials which generated residual waste. This residual waste, containing

radiological and hazardous substances, was disposed of in onsite treatment ponds. Over the years, several significant releases from these ponds occurred, impacting nearby groundwater and soil. Operations at the Fansteel Site ultimately ceased in approximately 1990. In the intervening period, Fansteel has twice filed for bankruptcy protection and entered into a number of agreements with the Nuclear Regulatory Commission, the Department of Justice, and the Oklahoma Department of Environmental Quality. Pursuant to one such agreement, Fansteel is required to pursue all potentially responsible parties under CERCLA for their share of the cost to remediate the Fansteel Site.

It has done so. Fansteel alleges certain defendants arranged for the treatment and disposal of materials containing hazardous substances ("Vendor Defendants"). Included in this group are movants Kennametal, Inc. ("Kennametal"), EverZinc USA, Inc. ("EverZinc"), Metallurg, Inc. ("Metallurg"), and Traxys North America, LLC ("Traxys"). The transactions at issue occurred as follows: Fansteel initially purchased raw materials consisting of tin slags or metal-bearing ores directly from each Vendor Defendant. This raw material was weighed and sampled by a neutral referee to determine the weight and percentage of tantalum or columbium contained therein. Fansteel then paid each Vendor Defendant the agreed-upon price per pound for either the tantalum or columbium content in the raw material. Fansteel did not pay any Vendor Defendant any amount for the residual waste in the raw material, and the residual waste was treated and disposed of at the Fansteel Site.

**I.      Kennametal.**

Fansteel and Kennametal entered into purchase agreements pursuant to which Kennametal contributed materials containing hazardous substances to the Fansteel Site for treatment and disposal. For example, Fansteel and Kennametal entered into a contract dated July 11, 1963, under

which 72,000 pounds of tin slags were processed into 36,000 pounds of tantalum and columbium. This contract provides that only the resulting tantalum and columbium were to be shipped back to Kennametal.

**II.   EverZinc and Traxys.**

Fansteel and Sogem Corporation ("Sogem") entered into purchase agreements pursuant to which Sogem contributed materials containing hazardous substances to the Fansteel Site for treatment and disposal. Fansteel and Sogem (or one of its divisions), entered into at least seven agreements under which a total of approximately 525 tons of raw material was shipped to the Fansteel Site. This quantity of raw materials generated approximately 140 tons of tantalum or columbium. The remaining approximately 385 tons of waste material contained hazardous materials and remained on the Fansteel Site. Sogem was subsequently succeeded by merger as Umicore. As alleged by Fansteel, EverZinc and Traxys are the successors of Umicore and of Umicore's liabilities at the Fansteel Site.

**III.   Metallurg.**

Fansteel and two predecessor entities, Metallurg, Inc. ("Old Metallurg") and its subsidiary Shieldalloy Corporation ("Shieldalloy"), entered into purchase agreements with Fansteel pursuant to which Old Metallurg and Shieldalloy contributed materials containing hazardous substances to the Fansteel Site for treatment and disposal. For example, Fansteel and Old Metallurg entered into a contract dated January 17, 1962, amended as of March 9, 1962, under which 33,600 pounds of columbite were processed. After the columbium was returned to Old Metallurg, approximately 8,064 pounds of residual waste material remained at the Fansteel Site. In 1993, Old Metallurg and Shieldalloy sought reorganization under the United States Bankruptcy Code. As alleged by Fansteel, Metallurg is a successor of Old Metallurg and Shieldalloy and of their liabilities at the

Fansteel Site. Metallurg retained Old Metallurg and Shieldalloy's business relationships, key employees, officers, directors, and/or shareholders.

## LEGAL STANDARD

When addressing a Rule 12(b)(6) motion to dismiss, the court does not weigh the evidence the parties might present at trial but instead assesses whether the plaintiff's complaint is legally sufficient to state a claim for which relief may be granted. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014). A complaint is legally sufficient when it contains enough "facts to state a claim to relief that is plausible on its face," and the factual allegations are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A well-pled complaint may survive a motion to dismiss "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. In assessing a claim's plausibility, the court must accept all well-pled facts as true and view them in the light most favorable to the claimant. *Brokers' Choice*, 757 F.3d at 1165. The court is not bound, however, to accept an allegation as true when it amounts to no more than a conclusory statement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ANALYSIS

Fansteel brought CERCLA claims against each Vendor Defendant for cost recovery, contribution, and declaratory relief. The claims for contribution and declaratory relief are derived from liability for the cost recovery claims. *See* 42 U.S.C. §§ 9613(f), 9613(g)(2); *Morrison Enterprises v. McShares, Inc.*, 302 F.3d 1127, 1135 (10th Cir. 2002). The movants have therefore attacked the cost recovery claims, seeking dismissal because they are not "arrangers" under CERCLA. The court first outlines arranger liability before turning to the specific claims of the parties.

4

## I.     Arranger Liability.

Title 42 U.S.C. § 9607(a)(3) imposes liability on "any person who by contract, agreement, or otherwise arranged for disposal or treatment . . . of hazardous substances[.]" To establish a prima facie case of liability under 42 U.S.C. § 9607(a)(3), a plaintiff must prove that: (1) the site is a facility, (2) the defendant is a potentially responsible party, (3) a release or threatened release of a hazardous substance has occurred, and (4) the release or threatened release caused the plaintiff to incur necessary response costs consistent with the National Contingency Plan.[1] *Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1269 (10th Cir. 2017). At this stage in the proceedings, the movants do not dispute that the Fansteel Site is a facility, that a release of hazardous substances occurred, or that the release caused Fansteel to incur necessary response costs. The focus of the present motions is instead on the second factor: whether the movants are potentially responsible parties.

A party is potentially responsible as an "arranger" under 42 U.S.C. § 9607(a)(3) where: (1) the party is a "person" as defined by CERCLA, (2) the party owned or possessed the hazardous substance prior to the disposal, and (3) the party by contract, agreement, or otherwise "arranged" for the transport or disposal of the hazardous substance. *Id.* at 1279. As to the first condition, the term "person" is defined by CERCLA as "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body." 42 U.S.C.A. § 9601(21). And as to the second condition, the defendant "must own or possess the hazardous

---

[1] The National Contingency Plan was promulgated to "establish procedures and standards for responding to releases of hazardous substances, pollutants, and contaminants." *See* 42 U.S.C. § 9605.

5

substance at issue." *Raytheon Constructors, Inc. v. Asarco Inc.*, 368 F.3d 1214, 1219 (10th Cir. 2003).

As to the third condition, a party arranges for the transport or disposal of hazardous substances "when it takes intentional steps to dispose of a hazardous substance." *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 611 (2009). This inquiry is "fact intensive and case specific." *Id*. at 610. It is clear that liability would attach "if an entity were to enter into a transaction for the sole purpose of discarding a used and no longer useful hazardous substance." *Id*. On the other hand, it is equally clear liability would not attach if an entity were to "sell[] a new and useful product if the purchaser of that product later, and unbeknownst to the seller, disposed of the product in a way that led to contamination." *Id*. Questions arise, however, regarding the many variations of agreements that fall somewhere between these two extremes, *i.e.*, "cases in which the seller has some knowledge of the buyers' planned disposal or whose motives for the sale of a hazardous substance are less than clear." *Id*.

The arrangements at issue here fall somewhere between the two extremes identified in *Burlington Northern*. As pled, Fansteel has stated a claim for arranger liability against the movants pursuant to 42 U.S.C. § 9607(a)(3).

**II.   Kennametal.**

Kennametal argues that dismissal is warranted because Fansteel failed to sufficiently allege that Kennametal intended to dispose of hazardous substances at the Fansteel Site.

Fansteel has stated a prima facie case of liability under 42 U.S.C. § 9607(a)(3). First, Kennametal, a corporation, is a "person" as defined by CERCLA. *See* 42 U.S.C.A. § 9601(21). Second, Fansteel sufficiently alleged Kennametal owned or possessed the hazardous substances prior to disposal. Kennametal raises questions about the role of the government's ownership, the

6

meaning of certain contractual provisions, and when title to the material was actually transferred. These, however, are arguments for another time. Fansteel expressly pled that Kennametal owned and/or possessed the materials at issue. Fansteel additionally attached and referenced agreements in which Kennametal furnished its own tantalum scrap material to Fansteel for processing. At this stage in the proceedings, the court accepts all well-pled facts as true and views them in the light most favorable to Fansteel. As pled, Kennametal owned or possessed the hazardous substances at issue.

Third and finally, Fansteel sufficiently alleged Kennametal arranged for the transport or disposal of hazardous substances. Fansteel expressly made such allegations and also included factual averments enough to raise the right to relief above the speculative level. *See Twombly*, 550 U.S. at 555. Fansteel adequately pled that Kennametal arranged for the transport or disposal of hazardous substances by evidencing intentional steps Kennametal took to dispose of such substances. *See Burlington N.*, 556 U.S. at 611. The raw materials delivered to Fansteel contained both useful and non-useful substances. After Fansteel processed these materials, it returned to Kennametal the useful substances, and the non-useful substances remained on site for disposal. The transaction price was based on the price-per-pound of the tantalum or columbium; no party was paid for the residual waste. As argued by Fansteel, this evidences Kennametal's understanding that the residual waste had no value and would be disposed of. For example, in a contract dated July 11, 1963, 72,000 pounds of tin slags were processed into 36,000 pounds of tantalum and columbium. Only the tantalum and columbium were returned to Kennametal, while the residual material containing hazardous substances remained at the Fansteel Site.

Fansteel sufficiently alleged that Kennametal intended to dispose of hazardous substances at the Fansteel Site. Accordingly, Kennametal's motion to dismiss is denied.

### III. EverZinc and Traxys.

As outlined above, the operative agreements here were between Fansteel and Sogem, an alleged predecessor entity. Fansteel acknowledges it is unable at this time to determine whether EverZinc or Traxys succeeded to the liabilities of Sogem and therefore named both parties as defendants. Neither EverZinc nor Traxys concede the issue of successor liability, but instead base their motions to dismiss only on the merits of Fansteel's CERCLA claims. They argue that dismissal is warranted because Fansteel failed to sufficiently allege that they intended to dispose of hazardous substances at the Fansteel Site.

Fansteel has stated a prima facie case of liability under 42 U.S.C. § 9607(a)(3). First, EverZinc (a corporation), Traxys (a limited liability company), and Sogem (a corporation) are each a "person" as defined by CERCLA. *See* 42 U.S.C.A. § 9601(21). Second, Fansteel sufficiently alleged Sogem owned or possessed the hazardous substances prior to disposal. EverZinc and Traxys concede that Sogem owned the initial raw materials but argue Sogem never owned or possessed the residual material which contained the hazardous substances. Such an argument is premature at the motion to dismiss stage, as it would require the court to resolve factual disputes about title transfer and make legal determinations as to whether the raw material in fact constituted a hazardous substance. At this stage in the proceedings, the court accepts all well-pled facts as true and views them in the light most favorable to Fansteel. As pled, therefore, Sogem owned or possessed the hazardous substances at issue.

Third and finally, Fansteel sufficiently alleged Sogem arranged for the transport or disposal of hazardous substances. Fansteel expressly made such allegations and also included factual averments enough to raise the right to relief above the speculative level. *See Twombly*, 550 U.S. at 555. Fansteel adequately pled that Sogem arranged for the transport or disposal of hazardous

substances by evidencing intentional steps Sogem took to dispose of such substances. *See Burlington N.*, 556 U.S. at 611. The raw materials delivered to Fansteel contained both useful and non-useful substances. After Fansteel processed these materials, the non-useful substances remained on site for disposal. The transaction price was based on the price-per-pound of the tantalum or columbium; no party was paid for the residual waste. As argued by Fansteel, this evidences Sogem's understanding that the residual waste had no value and would be disposed of.

EverZinc and Traxys make a number of arguments that essentially dispute the facts pled, *e.g.*, that while Sogem may have been aware residual materials would be generated and disposed of, the main purpose of the transaction was to sell raw materials, and not to ensure their disposal. They cite to historical reports of tantalum prices in the United States Geological Survey which purport to indicate Sogem's state of mind at the time of sale. Again, such arguments are misplaced at the motion to dismiss to stage. Fansteel sufficiently alleged that Sogem intended to dispose of hazardous substances at the Fansteel Site. Accordingly, the motions to dismiss of EverZinc and Traxys are denied.

### IV. Metallurg.

Metallurg has moved to dismiss for three reasons. First, it argues any liability was discharged in a prior bankruptcy proceeding. Second, it argues Fansteel failed to sufficiently plead successor liability. And third, it argues Fansteel failed to sufficiently plead arranger liability.

#### A. Discharge.

In 1993, Old Metallurg and Shieldalloy, the alleged predecessor entities, filed for voluntary bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York.[2] In 1997, the Bankruptcy Court entered its Order Confirming Debtors' Fourth Amended and

---

[2] Petition No. 93-44468.

Restated Joint Plan of Reorganization ("Confirmation Order"). The Confirmation Order operated to "discharge and release . . . all Claims against . . . the Debtors[.]" *See* Dkt. No 89-6. It further provides that "all holders of Claims . . . shall be precluded forever from asserting against the Debtors . . . any other or further liabilities . . . based on any act or omission[.]" *See id*. The Confirmation Order does not define the word "Claim," but provides that "[a]ll capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to such terms in either the Plan, the Plan Modifications, or the Findings of Fact and Conclusions of Law, as applicable." *See id*. The Confirmation Order was attached as an exhibit to the Second Amended Complaint. Neither the Plan, the Plan Modifications, nor the Findings of Fact and Conclusions of Law were attached as exhibits to the Second Amended Complaint or any briefing. In addition, these documents are not publicly available through PACER.

Metallurg argues that any liability it may have to Fansteel was discharged by the Confirmation Order. The court cannot make such a determination at this time. When evaluating a motion to dismiss, the court may consider the complaint itself, exhibits attached to the complaint, and "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The Plan and related documents were not attached to the complaint, and the parties dispute the meaning of the word "Claims." Based on the present record, all "Claims" against Old Metallurg and Shieldalloy were discharged, and any holder of a "Claim" is precluded from asserting it. The term "Claim," however, is not defined in any document properly before the court, and therefore the effect of the Confirmation Order cannot be determined.

At this time, the court cannot conclude that Fansteel's CERCLA claims were discharged. Metallurg may subsequently raise these issues at a later stage in the proceedings if it so chooses.

10

### B. Successor liability.

Metallurg was formed in 1997, approximately seven years after the Fansteel Site ceased operating. Fansteel seeks to impose liability on Metallurg by alleging Metallurg is a successor of Old Metallurg and Shieldalloy and of their liabilities at the Fansteel Site. Metallurg, for its part, asserts Fansteel failed to sufficiently plead successor liability.

And as a general rule, "where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor." *Equal Emp. Opportunity Comm'n v. Roark-Whitten Hosp. 2, LP*, 28 F.4th 136, 146 (10th Cir. 2022). There are, however, four well-recognized exceptions to the general rule: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporations; (3) where the purchasing corporation is merely a continuation of the selling corporations; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts. *Id.*

Fansteel focuses on the third exception, alleging Metallurg is "merely a continuation" of Old Metallurg and Shieldalloy. When determining whether a one entity is merely a continuation of another, courts consider "whether the selling corporation ceased to exist after the sale of assets to the purchasing corporation, and whether there was a common identity of directors, officers and stockholders before and after the sale." *Flores v. U.S. Repeating Arms Co.*, 19 F. App'x 795, 797 (10th Cir. 2001). Fansteel expressly pled that Metallurg is merely a continuation of Old Metallurg and Shieldalloy. It further pled additional facts to support this assertion, claiming that Metallurg retained Old Metallurg's and Shieldalloy's business relationships, key employees, officers, directors, and/or shareholders. Such allegations are sufficient. Fansteel has adequately pled successor liability.

### C. Arranger liability.

Lastly, and like the other movants, Metallurg argues Fansteel failed to sufficiently plead arranger liability. But like with the other movants, the court concludes Fansteel stated a prima facie case of liability under 42 U.S.C. § 9607(a)(3).

First, Old Metallurg, Shieldalloy, and Metallurg are each a corporation and therefore each a "person" as defined by CERCLA. *See* 42 U.S.C.A. § 9601(21). Second, Fansteel sufficiently alleged Old Metallurg and Shieldalloy owned or possessed the hazardous substances prior to disposal. Like EverZinc and Traxys, Metallurg argues that neither Old Metallurg or Shieldalloy ever owned or possessed the residual materials which actually contained the hazardous substances. Instead, so the argument goes, Old Metallurg and Shieldalloy owned or possessed only the raw materials, which cannot be characterized as hazardous. This simply disputes Fansteel's factual averments that that the raw materials contained hazardous substances. Again, such an argument is premature at the motion to dismiss stage, as it would require the court to resolve factual issues and make legal determinations. The court accepts all well-pled facts as true and views them in the light most favorable to Fansteel. As pled, therefore, Old Metallurg and Shieldalloy owned or possessed the hazardous substances at issue.

Third and finally, Fansteel sufficiently alleged Old Metallurg and Shieldalloy arranged for the transport or disposal of hazardous substances. Fansteel expressly made such allegations and also included factual averments enough to raise the right to relief above the speculative level. *See Twombly*, 550 U.S. at 555. Fansteel adequately pled that Old Metallurg and Shieldalloy arranged for the transport or disposal of hazardous substances by evidencing intentional steps Old Metallurg and Shieldalloy took to dispose of such substances. *See Burlington N.*, 556 U.S. at 611. The raw materials delivered to Fansteel contained both useful and non-useful substances. After Fansteel

processed these materials, it returned to Old Metallurg and Shieldalloy the useful substances, and the non-useful substances remained on site for disposal. The transaction price was based on the price-per-pound of the tantalum or columbium; no party was paid for the residual waste. As argued by Fansteel, this evidences Old Metallurg and Shieldalloy's understanding that the residual waste had no value and would be disposed of. For example, Fansteel and Old Metallurg entered into a contract dated January 17, 1962, amended as of March 9, 1962, under which 33,600 pounds of columbite were processed. After the columbium was returned to Old Metallurg, approximately 8,064 pounds of residual waste material remained at the Fansteel Site. Fansteel sufficiently alleged that Kennametal intended to dispose of hazardous substances at the Fansteel Site.

In sum, the court cannot at this time rule that Metallurg's liability was discharged in a prior bankruptcy proceeding. In addition, Fansteel adequately pled successor and arranger liability. Accordingly, Metallurg's motion to dismiss is denied.

## CONCLUSION

For the reasons set forth above, the Motions to Dismiss filed by Defendants Kennametal, Inc. [Dkt. No. 93]; EverZinc USA, Inc. [Dkt. No. 101]; Metallurg, Inc. [Dkt. No. 107]; and Traxys North America, LLC [Dkt. No. 128] are **DENIED**.

**IT IS SO ORDERED** this 21ST day of July, 2022.

**THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA**